519 So.2d 238 (1988)
Palma and Ronald MILLIMAN
v.
Helen PETERMAN and Marie Bulgherini.
No. 87-CA-385.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 1988.
Writ Denied March 11, 1988.
*239 James S. Arceneaux, Metairie, for defendants/appellants.
James T. Flanagan and Wayne H. Scheuermann, Mollere & Flanagan, Metairie, for defendants/appellants.
Jack A. Ricci, Baldwin & Haspel, Metairie, for plaintiffs/appellees.
Before BOWES, WICKER and GOTHARD, JJ.
BOWES, Judge.
In this action, defendants/appellants, Helen Peterman and Marie Bulgherini, assert that the trial judge erred when he held that the Millimans, plaintiffs and appellees, validly and timely accepted an offer by defendants to purchase immovable property belonging to plaintiffs and that the defendants later breached the contract, thus entitling the Millimans to the deposit and attorney's fees. We disagree and affirm.
When the plaintiffs moved from Kenner, Louisiana, to Bowling Green, Kentucky, they entered into a listing contract with Merrill Lynch Realty, Inc. to market the property.
On August 19, 1985, by which time the Millimans had already moved to Bowling Green, Mr. William Althans, an agent with Merrill Lynch, showed the property to the defendants-appellants and prepared an agreement to purchase. The agreement was signed by Ms. Peterman and Ms. Bulgherini. However, at line 79, the agreement had a provision that the offer remained binding and irrevocable through August 20, ____ at 7:00 p.m. and the year was not inserted in this blank space. The defendants also executed and signed a Real Estate Deposit Note for $9,950 as a partial deposit on the purchase, and, on August 20, 1985, gave Mr. Althans a money order made payable to Merrill Lynch Realty, Inc. in the sum of $1,000.00. Additionally, on August 19, 1985, the defendants signed a lease for use with an Agreement or Option to Purchase, intending to lease the home for a period not exceeding one year commencing on August 21, 1985, and ending the last calendar day of August 1986.[1]
*240 On that same date, August 19, Mr. Althans contacted Mr. Milliman and advised him that the defendants had made this offer to purchase the property. Mr. Althans testified that he read all of the pertinent parts of the contract to Mr. Milliman over the phone. Mr. Milliman testified that he had, in fact, accepted the offer over the phone, but, in discussing the issue with Mr. Althans, it was decided that the acceptance should be put in writing.
The following day, Mr. Milliman sent a telegram, addressed to Bill Althans, which stated:
WE, RONALD AND PALMA MILLIMAN, ACCEPT THE LEASE PURCHASE OFFER MADE BY HELEN PETERMAN AND MARIE BULGHERINI OF $109,500 WITH A 12 MONTH LEASE AT $850 PER MONTH FOR THE FIRST 6 MONTHS AND $875 PER MONTH FOR THE REMAINING LEASE. ALL OTHER TERMS AND CONDITIONS OF THE CONTRACT DATED AUGUST 19, 1985 ARE ACCEPTED.
RONALD AND PALMA MILLIMAN 12:06 EST
On August 21, 1985, the defendants moved into the home and remained there until some time after March 1, 1986, when they notified the plaintiffs and Mr. Althans, in writing, that they did not intend to purchase the home.[2]
Plaintiffs filed this suit and obtained a judgment forfeiting the purchasers' deposit to them, and awarding them attorney's fees under the contract.
On appeal, defendants present five assignments of error:
1. The trial judge was in error in failing to hold that the offer to purchase was to remain binding and irrevocable only through August 20, 1985.
2. The trial judge was in error in ruling that the acceptance by the plaintiffs of the defendants' offer by telegraph was satisfactory.
3. The trial judge was in error in ruling that the action of the defendants in moving into the premises indicated they were satisfied that their offer had been accepted.
4. The trial judge was in error in ruling that the defendants breached a contract and are not entitled to a refund of their deposit of $1,850.00.
5. In the alternative, and only in the event the court should affirm the decision of the trial judge, the trial judge was in error in awarding attorney fees of $2,500.00.
Assignments one, two and three will be discussed together for the sake of continuity.
Appellants argue strenuously that although the purchase agreement stated that "This offer remains binding and irrevocable through (date) August 20, ____ (time) 7 p.m." (and does not include the year "1985"), nonetheless it is clear what year was intended by the parties. Each of the three witnesses at trial, Mr. Milliman, Mr. Althans and Ms. Bulgherini, testified that August 20, 1985, at 7:00 p.m. was indeed the time limit set by and agreed upon by the parties.
The Louisiana Supreme Court held in Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La.1981):
[1] Although parol evidence is inadmissible to vary the terms of a written contract, La.C.C. art. 2276 [now see LSA C.C. art. 1848], when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the *241 ambiguity and to show the intention of the parties. [cites omitted]
Therefore, although the trial judge stated in his reasons for judgment "since no year was provided in the agreement, the court assumes that the time period was a reasonable period of time which was allowed to the plaintiff/sellers to accept the offer", considering all the testimony and evidence brought out at the trial, we find in the instant case that the date intended for the offer to expire was August 20, 1985 at 7:00 p.m.
The second assignment of error raised by the appellants asserts that the telegram was not a valid acceptance by the appellees of appellants' agreement to purchase. We find this argument without merit. In the case before us, appellants signed the actual agreement to purchase on August 19, 1985. That same day, the real estate agent contacted Mr. Milliman by phone, and, the very next day, several hours before the offer was to expire, the Millimans sent a telegram (contents reproduced supra) with their names typed out at the bottom.
Appellants cite Morvant v. Arnoult, 490 So.2d 549 (La.App. 4 Cir.1986) and Rebman v. Reed,[3] 335 So.2d 37 (La.App. 4 Cir.1976), Writ denied 338 So.2d 699 (La.1976) for the legal principle that "A contract to sell immovable property, to be enforceable, must be in writing and must be signed by the buyer and seller, and if an agent executes the contract on behalf of the buyer or the seller, the agent's authority must be express and in writing." Based on these cases, the appellants argue that since the agreement was not signed by both parties prior to the expiration of the acceptance period, it is invalid and appellees' oral acceptance and telegram do not cure the defect.
The cases cited by appellants to support their position are easily distinguishable from the facts of the instant case. Both of the cases cited by appellants involved a situation in which the seller did not sign the contract or exhibit any other outward manifestation of acceptance to sell except to rely on his agent to sign the agreement for him. In both cases, the court held that the agent did not have express written authority to act on behalf of his principal and for that reason the contract was invalid. This is clearly inopposite to the case at issue since neither the appellants nor the appellees assert that the telegram sent by the Millimans merely authorized Mr. Althans to accept the offer for them. The telegram and all other actions by the Millimans were done to indicate their acceptance of the agreement.
The issue we must decide is whether the written agreement to purchase was valid even though only one party actually signed that document while the other parties sent a telegram confirming their acceptance and provided other outward manifestations of acceptance. The trial judge determined this was a satisfactory acceptance. We agree.
Under Louisiana law, a promise to sell immovable property must be vested with the same formalities as prescribed for sales of immovable property. Oeschner v. Keller, 134 La. 1098, 64 So. 921 (La.1914); Alley v. New Homes Promotion, Inc., 247 So.2d 218 (La.App. 4 Cir.1971), Writ denied 248 So.2d 832 (La.1971). The Civil Code requires that all sales of immovable property shall be made by authentic act or under private signature. LSA C.C. Art. 2440. The Civil Code further requires that an act under private signature need not be written by the parties, but must be signed by them. LSA C.C. Art. 1837. However, the "Comments" under this Article, Section (b) states in pertinent part: "This article is not intended to change the jurisprudential rule that an Act under private signature is valid even though signed by one party alone,..." The cases which support the proposition expressed in the comments above are legion. See: Miller v. Douville, 45 La. Ann. 214, 12 So. 132 (La.1893) (A written promise to sell real property is valid, and may be enforced, although not signed by *242 the obligee.) Joseph v. Moreno, 2 La. 460 (1831) (A written promise to sell signed only by the vendor was valid and that acceptance by the vendee could be established by extraneous evidence to the written agreement.) Miller v. Miller, 335 So. 2d 767 (La.App. 3 Cir.1976) writ denied 338 So.2d 927 (La.1976) (There is no requirement that a written promise to sell be signed by both parties. Acceptance by the vendee could be established by evidence extraneous to the written instrument.) Cerami v. Haas, 195 La. 1048, 197 So. 752 (La.1940). (The law does not require that the acceptance of a contract be expressed on its face, nor is it essential that the Act be signed by the party in whose favor it is made. The acceptance may result from his acts in availing himself of its stipulations or in doing some act which indicates his acceptance.) Succession of Jenkins, 91 So.2d 416 (La.App. 2 Cir.1956). (The consent and agreement of vendees may be shown otherwise than by the signing of the Act of Sale itself.) Alley v. New Homes Promotion, Inc., supra. (An acceptance of a written offer may be proved by some unequivocal act of the offeree, if the terms of the contract are clearly indicated in the written offer.)
Thus, the courts of this state have repeatedly declined to find an agreement to purchase or sell invalid simply because one party failed to sign the instrument but at some point later that same party exhibited some outward manifestation of acceptance beyond oral assent.
The following factors indicate to us that although one party (the seller) did not actually sign the agreement prior to the established deadline, that party did exhibit many acts of outward manifestation of acceptance beyond oral assent, including the following:
1. Appellants signed the agreement to purchase and did not revoke their offer prior to the expiration of the acceptance period as set forth in the agreement.
2. The Millimans were verbally informed of all pertinent points of the agreement to purchase.
3. Within the acceptance period set forth in the agreement, the Millimans sent a telegram stating their intention to be bound by the agreement.
4. The agent for the appellees accepted a Real Estate Deposit Note for $9,950 as a partial deposit and a money order for $1,000 made payable to Merrill Lynch Realty, Inc. both provided by the appellants.
5. The appellants provided the Millimans with an $850 damage deposit on the home.
6. They were allowed to move into the home.
7. The Millimans did actually sign a copy of the agreement as soon as they received it on August 25, 1985.
We note that in this case, as with all of those cited above, the agreement actually was signed by the party who now alleges that the agreement is invalid for lack of form, even though the non-signing party manifested his assent to the agreement by unequivocal acts. In this case, we agree with the well-established principle that the party who has given his written assent to an agreement and later asserts that the agreement is invalid for lack of the other party's written assent, is estopped to assert this lack of formality. Bradford's Heirs v. Brown, 11 Mart (O.S.) 217 (La.1822); Jones, An Exception To The Rules of Form and Parol Evidence, 33 La.L.R. 344 at 349 (1973). The telegram and other outward manifestations of acceptance by the Millimans communicated the intention of the sellers to be bound to the purchase agreement and is sufficient to create a binding and enforceable obligation. Therefore, we find that there was a meeting of the minds, that the written contract was accepted and consented to by both parties, and is valid and binding on each.
Assignment of Error No. 4
Since we find that the trial judge was correct in finding for the plaintiffs, and that the defendants violated the contract, we also find that the defendants are not entitled to a refund of their deposit of $1,850.00. The basis for determining the *243 appellants are not entitled to a refund of their two deposits, one for the purchase of the home of $1,000.00 and the other a damage deposit of $850.00, is a hand-written note on the last page of the Purchase Agreement:
Purchaser agrees to pay $875.00 month if lease extends past six months but in no event will lease be for a period longer than 12 months. The $1,000.00 deposit and $850.00 security deposit will apply to the sale but will be non-refundable if the sale does not take place for any reason whatsoever.
We consider the above-quoted language clear and unequivocal and, therefore, the trial judge was correct in determining the appellants are not entitled to a refund of any deposit. However, we note that the trial judge did give the appellants credit for this $1,850.00 towards the $10,950.00 due for the purchase option.
This assignment lacks merit.
Assignment of Error No. 5
Appellants argue that because the record is very small (indicating the trial consumed a very small amount of time), the attorney's fee of $2,500.00 should be reduced. We disagree.
It is a well-established rule that courts may rely upon their own expertise in fixing fees of an attorney. Reynolds, Nelson, Theriot & Stahl v. Chatelain, 428 So.2d 829 (La.App. 5 Cir.1983), Writ denied 434 So.2d 1098 (La.1983).
In addition, there are other factors to be considered in determining attorney's fees, such as the amount involved in the controversy, the skill of the attorney, and the amount of work undertaken by the attorney. Ray v. Superior Iron Works & Supply Co., Inc., 284 So.2d 140 (La.App. 3 Cir.1973), Writ denied 286 So.2d 365 (La. 1973); Reynolds, supra.
In the instant case, the record reveals that in addition to the prosecution of the plaintiffs' case at trial, the appellee's attorney also had to defend a reconventional demand made by the appellants. We also note that the appellees live in Kentucky, which is certainly inconvenient and more time consuming for any attorney involved in representing them in a court action in this state. Accordingly, we see no abuse of discretion by the trial court in determining the amount of attorney's fees due here.
Accordingly, for the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are to be borne by the appellants.
AFFIRMED.
NOTES
[1] The defendants were awaiting an insurance settlement and intended to use the proceeds of the settlement to purchase the home. Consequently, if the settlement took place prior to the end of the year lease, the property would be purchased sooner. We note, however, that the purchase of the home was in no way predicated on their receiving the insurance settlement.
[2] In March, 1986, when the defendants' rent check was late in arriving, and Mr. Milliman called regarding the status of the payment, he was told over the phone that the defendants did not intend to purchase the home as they had agreed to do. At some later point, their intention was reduced to writing.
[3] The two cases cited in Rebman, supra; Turner v. Snype, 162 La. 117, 110 So. 109 (La.1926) and Krupp v. Nelson, 50 So.2d 464 (La.App.Orl.1951) also involve real estate agents acting for a principal without express written authority.