COOKS, J.,
dissenting.
[4 respectfully dissent from the majority opinion finding the handwritten document does not contains all the elements necessary for a valid contract to sell. The majority relies on Mr. Gifford’s “argument” that his signature only evidences a receipt for $100 and finds the handwritten document “lacks specificity with regard to the terms of any underlying contract.” I respectfully disagree. The handwritten document contains the three elements necessary for a valid contract to sell — the thing, the price and the signature of both parties. The only real factual dispute is whether the price was written on the document prior to Mr. Gifford’s signature. What Mr. Gifford says he intended when he signed the document is immaterial and inadmissible.
At the hearing, Mr. Moss explained.the parties had been negotiating for the purchase of the property “probably two months on the phone coming up with the original buy/sell agreement [the type-written document].” He explained how the handwritten document evolved:
[T]he buy-sell agreement that he showed you was the original agreement that we negotiated over the phone, but whenever I went to actually purchase the property at Mr. Gifford’s home, some facts had changed. So, he didn’t want that particular contract, he wanted some things removed, which we did in that [handwritten] agreement. And then we signed that agreement.
Mr. Moss stated the document was signed in that way because that was “the progression of the way we did our deal.”
| j>,The handwritten buy/sell agreement identifies the property as 2427 Rose Street with the purchase price of $15,000. This agreement contains the terms and conditions of the final sale and is signed by both parties. Mr. Moss signed the agreement below the terms evidencing his intent to purchase the property. Mr. Gifford signed the agreement above the terms, accepting Mr. Moss’ $100 deposit toward the purchase of the property.
Mr. Gifford does not seriously dispute that the document is a writing. His lawyer simply argues his signature on the handwritten document merely evidences a “receipt” acknowledging he took possession of Mr. Moss’ $100.00 and nothing more. He contends this “receipt” is insufficient to constitute a valid buy/sell agreement because he did not sign below the portion which contains the terms and conditions of the buy/sell agreement. The majority finds the absence of Mr. Gifford’s signature at the bottom of the document is fatal to Mr. Moss’ position that a valid buy/sell agreement was executed. I disagree.
There is no specific format or layout for a buy/sell agreement and, as Mr. Moss states, it “could have been put on a piece of toilet tissue” if it memorializes the parties intent in writing. As noted, a valid contract to sell requires three prerequisites: the thing, the price and the consent of the parties.
In this case, the agreement was handwritten, described the thing to be sold as 2427 Rose Street and states the purchase price of $15,000. The fact that Mr. Moss’ consented to purchase the property at that price is clearly evidenced by his signature appearing at the bottom of the document.
Mr. Gifford’s signature at the top of the document and his acceptance of the $100 “toward purchase of 2427 Rose St.” confirms his acceptance of the terms of the contract. The placement of Mr. Gifford’s signature at the top of the instrument rather than at the bottom is not sacrosanct or legally fatal to the validity of the agreement. [aA reasonable fact finder could *109 conclude that there is no other explanation for Mr. Gifford to take Mr. Moss’ deposit and place this notation on the document other than he consented to sell the property on the terms and conditions contained in the agreement. See La.Civ.Code art. 2624. The insufficiency of the form of acceptance may not be determinative of whether the contract is valid. “Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.” La.Civ. Code art.1927. I do not believe the absence of the words “I agree to sell” is fatal to this ease if the consent of the seller can be discerned from an examination of the instrument. In Tullis v. Aertker, 352 So.2d 415, 418 (La.App. 3 Cir.1977), the issue arose as to whether the seller had agreed to the sale of the property when the only evidence of his consent was his signature on a receipt. This court found a receipt may indeed evidence a thing to be sold and the consent, stating:
It is settled that a receipt for all or part payment of the purchase price is sufficient to satisfy the requirements of LSA-R.C.C. Articles 2440, 2462 and 2275 if such writing adequately sets forth the three necessary elements, i.e., the thing sold, the price, and the consent.
In the instant case the consent of the parties is clear. Mr. Aertker’s consent is evidenced by his signature on the receipt. Mrs. Tullis’ consent appears from the fact that following execution of the agreement of November 2, 1963 she moved onto the premises which she has continued to occupy and by the fact that she faithfully made the monthly payments as provided for in the agreement.
Mr. Gifford does not assert his consent was vitiated by error, fraud, or duress. La.Civ.Code art.1948. In support of his motion for summary judgment, Mr. Gif-ford offers only the type-written, unsigned document and his affidavit. Further, his affidavit addresses only the unsigned document and does not refute any of the issues raised by Mr. Moss regarding the progression of the transaction or Mr. Gifford’s signature on the handwritten agreement. Mr. Gifford’s counsel, however, at the summary judgment hearing, verbally dismissed the handwritten agreement by | implying the terms were written after Mr. Gifford signed what he characterized as a “receipt.” When Mr. Moss stated he had a witness who could testify regarding the circumstances surrounding Mr. Gif-ford’s signature on the document, the trial court found such evidence would not be admissible. Louisiana Civil Code Article 1848 provides, in part: “Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature.” It does not appear, however, that Mr. Moss was attempting to negate or vary the terms of the agreement. He was seeking to introduce evidence of the progression of the transaction and present a witness who may have been present at the time Mr. Moss wrote the terms and conditions of the agreement on the document and Mr. Gifford signed it. Mr. Moss’ need to introduce evidence regarding the transaction was prompted by Mr. Gifford’s counsel’s argument for the first time at the hearing that the handwritten document was “a totally separate concoction of whatever nature that Mr. Moss [wrote] underneath Mr. Gifford’s signature.” He stated, as well: “And as you can see, Mr. Gifford signs underneath the receipt. Then in a totally different handwriting Mr. Moss writes in something and fills it out. So, Mr. Gifford gives him a receipt and this is what Mr. Moss does with this receipt.” The trial court did not allow Mr. Moss to present evidence to refute these unsup *110 ported statements made by defense counsel. In fairness, the trial court was correct in barring this testimony at the summary judgment hearing. Evidence supporting or objecting to the motion must be submitted by countervailing affidavit and/or other written documents or exhibits prior to the hearing. Although I do not believe the trial court’s decision to grant the motion ultimately rested on the “disputed facts” at the hearing concerning the circumstances leading up to the signing of the agreement, I note this evidence maybe relevant and admissible at trial on the merits. Mr. Moss astutely noted he would have submitted evidence refuting defense counsel’s argument had he been aware of the |fidefense’s position prior to the motion. Argument of counsel is not evidence. Mr. Moss was required only to refute the affidavit submitted by Mr. Gifford which I believe he successfully did in this case. The trial court found “you had an agreement that he may sell it” and ultimately concluded Mr. Gifford did not sign the document at the bottom and this was fatal to a valid buy-sell agreement. If it is established at trial that the price was indeed reflected in the document at the time Mr. Gifford signed it, the court may find a contract to sell was legally perfected. Thus, summary judgment dismissing Mr. Moss’ claim was inappropriate at this stage of the proceeding. I would reverse the judgment of the trial court and remand for full trial on the merits.